Morning. May it please the Court, my name is Jenny Morf and I'm here representing Jan Brown, Defendant Appellant, in this appeal of a First Amendment retaliation claim. I'd like to reserve three minutes for rebuttal, please. In order to prevail on Defendant Brown's motions for judgment as a matter of law and summary judgment at the District Court below, Plaintiff was required to demonstrate by a preponderance of the evidence that a crime may face a case for retaliation under the First Amendment. There's three prongs to that. First, that Plaintiff spoke out on a matter of public concern. Secondly, that there was a termination. And finally, that Ms. Brown's conduct was a substantial or motivating factor in the decision to terminate. With regard to the first prong of the prima facie case, I'd like to- Excuse me, but we're now dealing with a post-trial motion, so why does the prima facie case matter? If I heard Judge Berzon correctly, you were asking about post-trial motions? Yes, this is about a post-trial motion, so why does the prima facie case as opposed to the overall evidence matter? Well, and we're also dealing with the motion for summary judgment. I don't think we- do we have jurisdiction to consider a summary judgment motion at this stage? My understanding is that the Court does in conjunction with the- also with the post-trial motions, in order for this case to go to the jury in the first instance, there needed to be a showing of the prima facie case and that there was actually some causation between Ms. Brown's actions as an individual and the termination decision. And that's where we have, you know, a huge hole in the case. How does the jury verdict impact on the prima facie case? Well, Your Honor, our proposition is that the case never should have gone to the jury in the between the actual actions of an individual person and the termination decision. Ultimately- I mean, I just think it's clarifying that ultimately you're saying simply that there wasn't enough evidence of causation. Let's get the prima facie case out of there. It's just confusing. But we're still in the same place. Was there prima- was there sufficient evidence to go to the jury on the causation issue? Yes, Your Honor. Okay. I'd also like to bring the Court's attention to the Supreme Court's ruling, Garcetti v. Ceballos. We're familiar with the case. Yes, I know, Your Honor. Thank you. And in that- with that rule, neither the District Court nor the parties actually considered or break that rule below. And so in accordance with some of the other Ninth Circuit cases, Freetog and- Why don't we focus on- I think we're familiar with the public concern- matter of public concern issue. It wasn't litigated below. So why don't we focus on the causation, the- Absolutely, Your Honor. The Mt. Healthy analysis. Absolutely. Well, when we looked at the evidence that was presented below, what we find is only conjecture and speculation about some conduct that may have occurred that might have influenced the termination decision. And as a matter of law, such speculative or conjecture- Why don't we be specific, okay? Instead of- we've read your briefs, so what the oral problems are. So you have- your client was clearly part of management. She had the authority to hire. This- the evidence seems to be that she didn't have authority to terminate. Correct? The issue isn't so much authority, Your Honor, although she did not have authority to terminate. It's not so much authority as much as it is- What she did. Okay, so I'm just trying to say- she's in management. It's not- she's just not one of 35 witnesses who talked to Ms. Fuller or the investigation. She had a role to play. She's the one who presided over the meeting in the office where the administrative lead- letter was delivered. I don't- I don't know that there's evidence that she presided over any meeting. She was a participant in a meeting. Who signed the letter? Joanne Fuller, the department director. No, the administrative lead. Oh, placing her on administrative- Yes. Wasn't that a meeting in Ms. Brown's office? I don't believe that the evidence shows that, Your Honor. I thought I read testimony by Ms. Brown that she said she brought in two other folks from either management or two other folks. She wanted there to be present when she confronted Ms. Scott, correct? Ms. Brown signed the letter of termination and then called the director- No, she signed the letter of administrative lead. The letter for administrative lead. And she called in two other managers so that they could- Correct. She called them in. Right. Okay, so if one had to- if the jury heard this, the jury would most likely conclude Ms. Brown was presiding because the others didn't call themselves in. She called them in. The jury could have concluded she was in charge of that meeting. Well, except that the direct evidence was that her supervisor ordered her- her supervisor ordered her to sign the letter. She may have, but she may have ordered her, but nonetheless, Ms. Brown presided over that initial confrontation. The jury heard that. Okay, and so- It could infer from that that, looking at the facts, that Ms. Brown had some authority and some role to play that was greater than perhaps the two other people who were in that room. Could they not have inferred that? I think that they could infer that she played some role, yes. Yes, okay. However, some role or participation in management isn't enough to send the question to the jury in the first place because there has to be- We're not talking about sending. Let's talk about what happened, okay? I don't think we have- let's assume we don't have jurisdiction at this point, trial having gone forward to review the summary judgment. Okay. Let's keep focused on- if you're right about that, then you- that will be an easier hurdle to get by perhaps, but let's focus on your higher hurdle. Okay, so when we look at the evidence that was presented to the jury, we have evidence that Jan Brown's a member of management. She signed the administrative leave letter. She participated in some meetings, but there isn't evidence to show that her discriminatory animus actually affected the termination decision that the decision-maker, Jan Koehler. There's no evidence that she received a recommendation from Ms. Brown. There's no evidence that Ms. Brown provided incorrect, inappropriate, or untruthful information or biased information to Ms. Fuller in making that termination decision. I suppose logically it wouldn't matter whether it was inappropriate and untrue or appropriate and true if it was motivated by a retaliatory animus and she was the cause of it. Right? If- it is a little bit hard to hear you, Judge, but- I'm sorry. It wouldn't matter as I understand it on this hearing whether her- if she provided information or urged the firing, whether it was true or untrue or appropriate or inappropriate on this retaliation theory wouldn't matter. Correct, Your Honor. There has to be evidence that her retaliatory animus actually affected the termination decision and that's where we're missing the evidence. Joanne Fuller testified- Well, you're certainly missing direct evidence. The question is whether you're missing a set of facts from which it could be inferred. What about the fact that the computer was apparently in her office and that she was investigating the source of the problem? Well, the evidence shows that the computer, after the administrative leave, the computer was stored in Ms. Brown's office. The investigation was conducted by an independent investigator, but storing some personal property in a manager's office is not- Well, it's not that it's personal property. It's the key. It's the property that was being investigated for this purpose. Well- If it was a purse, it would be different. It wasn't a purse. It was the source. It was the central document, so to speak, in the dispute. The computer itself, correct? Right. That's what's being stored in the office, but- Right. Having a computer stored in the office, I think reasonable inferences can be drawn from that, inferences that- Well, the reasonable inference is that she had some control or role in dealing with this computer. As a manager of the department, correct. Right, and the computer was being investigated, was what was being investigated and was where they found this document that was adverse to Ms. Brown. I think that the main issue here is that if we're, if just mere participation in an investigation, being involved in management above the chain of command, participating in meetings- All right, but this is why I'm asking you. Nobody else had the computer in their office. That makes her something other than a mere witness in the investigation. She was the one who had control over that computer for that period. There must have been some reason she was given control over that computer, such as the fact that she was the chief person in the investigation, or the chief person who was concerned about it. Well, there's no evidence that she was actually doing the investigation, or that she used that computer to create evidence that actually affected the decision maker. But I think the question really is, can that fact support an inference by the jury that she was a leading player, and therefore was in some way the motivator for the dismissal? I personally am very reluctant to overturn a jury verdict, and I think what we really need to look at here is, was that, coupled with the meeting, enough to sustain the jury verdict? And from Ms. Brown's position, the answer to that is no. We thought that might be your answer. You're over time at this point, so why don't I'll give you a minute, approximate it for rebuttal. Let's hear from the other side. Please. The court counsel, my name is George Fisher, and I represent the plaintiff in this matter. I contemplated submitting this case to the court on the briefs. If you have some questions beyond what... What is the evidence that you have Fuller who says, I'm the one that made this decision. I didn't, I was not influenced by anybody else, other than just getting information. So where's the link that suggests that Ms. Brown was a substantial or significant cause in the termination? As we set out in both the post-trial brief and the appeals response brief, and I'm referring to... I'm sorry, I can't hear you. He's not talking. I'm just trying to find my reference, Your Honor. Page nine and 10 of the response brief, which cites the final court's analysis on page 14 and 15. It would be better to have your analysis, and we read the brief. Let's start with the premise that the evidence is thin. And it would really be helpful to have you summarize the thin evidence and tell us why a jury could make the inference that you say it could make. Yes, of course, Your Honor. Our position is that when Lakeside Scott filed her bully complaint in November, and 11 days later, she was placed on administrative leave, the case theory at that point was based solely on that act. Now, there was a whole history and litany of events involving ergonomics and non-promotion issues and so forth. I think we could say that your client is a high-maintenance employee, couldn't we? You don't have to answer that. And that after the bully complaint was filed, the signature by Ms. Brown on the letter of administrative leave pending investigation initiated the whole litany of events that we say support the jury's verdict. Those facts include that not only did the computer come into Ms. Brown's office, but that it was hooked up and that the testimony given to the jury that she had admitted that she had written this journal that my client had assembled with unflattering information in it about certain conduct of Ms. Brown, as well as administrative decisions of the county itself. And it was that supposed access to information off the county's computer system that created that journal that was the basis for the county's discharge of her because she was acting outside the scope of her employment. Having said that, there was evidence that even refuted that argument at the trial. We had a testimony from an information technician from the county who said it was possible for Ms. Lakeside Scott to access by accident the forbidden information and that her, Ms. Lakeside Scott's immediate supervisor, Mona Hoag, when all of this came to light, admitted that her perception was that the administrative leave was retaliatory in nature. That was unrebutted by any testimony by the defense. The confluence of the management team that Ms. Brown supervised was Dan Gordon and there was another one whose name I can't recall at this moment who assisted her in collecting information. The first stop was the computer which accessed correspondence between my client and another employee who had had major employment issues with the county, David Landis. That was not just to trade off Mr. Landis's, the jury heard that that exchange of information was not to just trade on the support given his experience with the county, but that she was actually soliciting his assistance and guidance. He was a fact witness concerning what was being discussed and the issues that were being discussed prompted Ms. Lakeside Scott to file the bullying complaint in the first instance. Ms. Brown had a motive, that's what she wanted to prove, and that's important. So she had a reason to retaliate. So that piece seems to be pretty solid. But then, and she seems to have had a role in the administrative leave. So you might certainly have a lawsuit on the administrative leave. What about on the termination, however? In terms of her motivation? No, in terms of her causation. On the termination as opposed to on the administrative leave. Or is the administrative leave enough itself? The question is, all right, I understand it's a little hard to hear over the phone. All right, the question is, we'll assume you've established animus. We'll say you have established animus throughout the process as far as Ms. Brown. The question is, was her animus a substantial or motivating factor in Ms. Fuller's decision to terminate Ms. Scott? Where's the evidence that whatever ill will existed between her client and Ms. Brown translated into a termination decision made by somebody else, based on evidence that Ms. Scott had engaged in some inappropriate behavior? I believe I understand the question. Thank you. What we presented to the jury was that some of the first, as a preparatory matter, the evidence I've already addressed about the computer in the office, the journal, and so forth. In addition, we cited the investigation by the county investigator of employment matters that was appointed by Ms. Fuller to interview many, many county employees. What's that got to do with Ms. Brown? Well, the point being that, number one, Ms. Lakeside was not interviewed. She did speak with Ms. Fuller. You're not suing Ms. Fuller. You're suing Ms. Brown. She's got to be a substantial or motivating factor in Ms. Fuller's decision. She says, Ms. Fuller says, I wasn't influenced by Ms. Brown. We have an investigation. You've only sued Ms. Brown. Lots of people answered questions in the investigation. What's the evidence that Ms. Brown herself, for whatever her bad motivations were, was a substantial or motivating factor? I was explaining about the investigation to go by way of reverse engineering, that what was not present in that investigation supports the argument that Ms. Brown did have a leading voice in the decision to terminate. That would include the fact that all of the issues in Ms. Lakeside Scott's BOLI complaint were the very same issues that they were investigating other employees for. By inference, we asked the jury to accept the connection that Ms. Brown linked with the fact that she was looking at the journal, she was looking at the computer, she was working at a management level with her staff and with county attorneys in coordinating a decision about how to proceed in her case. And that it was at that point, given the content of what was in the large journal, information about personal life issues and just basically derogatory statements that were offensive and shocking to Ms. Brown such that she had a motive to affect and impact the scope of the investigation as well as... But she did have a motive, but did she? What's the evidence that shows she didn't? We agree she had a motive, but we need some basis for inferring that she acted on her motive. Acted and affected Ms. Fuller's decision. My response... Are you suggesting that Ms. Brown was the one who shaped the course of the investigation and she's the one that made the decision not to interview your client? Yes, I believe that Ms. Fuller's decision was a pro forma process. She did not involve herself on day-to-day staff issues at the level that Ms. Brown did. Ms. Brown had control of a far-reaching and a well-populated office. Of the investigation. Did Ms. Brown control and shape the investigation? I would say she impacted it and she had significant influence in the issues that were going to be considered supportive of the decision to terminate by the county. I'd like to ask one question, counsel. I'm concerned about the punitive damages here. I'd like to know what was the egregious conduct that would support the punitive damage award in this case? I think that the reprehensibility prong of the state farm analysis was where my answer is coming from. What did Ms. Brown do that was so reprehensible here? That's exactly what I answered in the previous question. That her impacting, manipulating, guiding the focus of the investigation that would knowingly, willingly, irresponsibly define the outcome of the investigation resulting in termination would be the reprehensibility prong supporting. Do you think she corrupted the investigation in any way? I mean, were there findings in the investigation that were not in fact true due to her conduct? Well, it depends on with whom one speaks. We would certainly say yes to that question. Yes, that is the gravamen of the case. This is a person who abused their authority in a way that was specific to interests peculiar to her and influenced other people to come to her side of the line, if you will, and to affect the decision to terminate, which is what she did. As a procedural matter, is it your understanding that there are essentially two punitive damages issues before us or one? Is there a challenge to the substantive standard for punitive damages as well as to the State Farm due process issue or not? And the reply seems to be saying that there was no basis for punitive damages in the first place, quite aside from the amount. If I understand your question, if I heard it correctly, you're asking is the reprehensibility... No, I'm not asking that. I'm asking what exactly is the issue before us on punitive damages? Is it only reduction on the due process theory or is it a substantive question as well as to whether punitive damages are available at all? Under State law. Under State law. Yeah, no, well, I guess it would be under 1983. 1983. Okay, the question is, as I understand it, under State Farm and Williams in those cases, the question is whether the amount of punitive damages... Judge Berzon, you do pick up when you make any movement or... Yeah, I was trying to move it closer so I could hear better. Okay, fine. The question is whether or not the amount is constitutional or not, all right? So is the issue in this case whether your client's entitled to get any punitive damages based on the evidence that's necessary to sustain punitive damages or is it the amount that is too high, according to Williams and the other standards, reprehensibility and so on and so forth? Do you view it as just the latter or both? I'd say a matter of degrees. I think that it would be like a 20-80 split, that the first part of the reprehensibility prong would be something that would be subject to be looked at, but that the amount is entirely appropriate, given what we would say is the reprehensibility of the conduct. Okay, I think we have the point. We'll have to figure out what maybe the better person to answer will be the defendant. Thank you. Thank you. Thank you, Your Honor. I can answer the question with regard to punitive damages. There are two issues before the court on punitive damages. The substantive issue of whether or not punitive damages should have been considered at all, based on the evidence of evil intent or callous indifference, and then the State Farm analysis of whether or not the amount reported was. And you're arguing both? Correct, Your Honor. Correct, Your Honor. But if we upheld the substantive jury verdict, then it would have to be on the basis that there was an evil motive, no? Well... Because the issue in this case really isn't the motive, it's the causation. Well, when we look at the availability of punitive damages, mere culpability for the Section 1983 claim is not enough to sustain punitive damages. There must be more. Of this, of the callous indifference or evil motive. All right. But when you have a retaliatory discharge kind of 1983 case, you pretty much have the motive. And I think there's case law to that effect. They kind of collapse into each other for this kind of 1983 case. Well, Your Honor, I would direct the Court's attention  And in that case, my reading of it is that simply culpability under a discrimination or retaliation claim isn't enough then to establish punitive damages as a matter of law. There may be cases where a plaintiff presents sufficient evidence of discrimination or retaliation that will also satisfy the punitive damages requirements. But such is not the case here. In this case, the only action by Defendant Brown, which I found cited in the record that was presented to the jury, was that at one point, Ms. Brown walked away from a conversation when Ms. Lakeside Scott approached the conversation. Perhaps this is rude behavior or not best management practices, but it doesn't rise to the level of callous indifference or evil motive for the purposes of punitive damages. And especially... I think we have the point. You've gone a little beyond the time. Thank you very much.
judges: Fisher, Berzon, Barzilay